## DAVIS v. O'FERRALL.

In an action for dower to lots in the city of Dubuque, on which plaintiff's husband had a pre-emption right, but conveyed his right, by deed. to B., who thereupon purchased the title from the United States, and subsequently conveyed the same to the defendant; held, that defendant was estopped from showing that plaintiff's husband was not seized of the lots, and that she was entitled to her dower therein. GREENE, J., *contra*.

Where the husband conveyed his title to land, before the Code, and died after it took effect, his widow is entitled to dower for life only, according to the law in force at the date of the conveyance.

### *Appeal from Dubuque District Court.*

*Opinion by* HALL, J. This was a petition for dower in certain described lots in the city of Dubuque.

The records and proceedings of the court below present the following case :

The petitioner, Jane B. O'Ferrall, was married to Francis K. O'Ferrall, in the year 1834 ; that about the same year they became residents of Dubuque ; that said Francis K. O'Ferrall, soon after their settlement in said city, came into possession of the real estate described in the petition, by virtue of a pre-emption right, and occupied and improved the same ; that in 1837, said Francis K. O'Ferrall proved up his pre-emption on said lots, under the act of congress

laying out the city of Dubuque; that Elijah M. Bissell purchased the said lots and improvements from said Francis K. O'Ferrall, on the 15th of September, 1840, for the sum of five thousand five hundred dollars; that he executed a deed to Bissell for the same, warranting and defending the title against all persons except the United States; that Bissell entered into the possession of the premises under the sale; that afterwards, in order to enable said Bissell to enter said lots from the United States, O'Ferrall relinquished to the United States his pre-emption right; that said Bissell purchased said lots from the United States, and received a patent therefor; that afterwards, Bissell conveyed to Davis the defendant; that petitioner had never relinquished her dower in said lots; that said Francis K. O'Ferrall died on the 5th of December, 1851, and that Bissell and his grantee have held the premises up to the time of filing the petition.

In deciding this case, it is enough for us to know that Francis K. O'Ferrall and petitioner were lawfully married before the conveyance to Bissell; that O'Ferrall was in possession of the premises in which the petitioner demands dower; that he conveyed by deed the premises to Bissell, who entered under the the deed, and that he has not been evicted, but has in person or by his grantees, held the possession up to the time of filing this petition.

Bissell having entered into the premises under the deed from O'Ferrall, is estopped from denying O'Ferrall's title, whilst he or his grantee continue that possession. The door is effectually closed against all other enquiry. The authorities appear to be clear and uniform upon this question.

1 Conn. R., 185; 2 Greenlf., 227; 6 ib., 244; 17 Wend. 164; 14 John., R.. 22; 7 Cowen, 637; 2 Hill, 303; 5 Wend., 247; Park on Dower, 247 to 253.

The dower should be assigned under the law in force at the time of the conveyance by O'Ferrall to Bissell. This is an estate for life in the one-third part of the premises·

At the time of the conveyance to Bissell, the law of dower only gave a contingent or inchoate right to the wife, of a life estate. Every other part, except this right of dower, was vested in the husband. He could convey what he legally owned, and on which there was no legal encumbrance, neither inchoate or contingent, and Bissell could safely purchase, without the fear of future legislative enactments, all that O'Ferrall owned and could sell.

O'Ferrall had the right to sell all that the law then in force did not reserve for the wife, in case she survived her husband. The contract of sale was lawful and obligatory; and any act of the legislature, that changed the estate granted by O'Ferrall and purchased by Bissell, would be a clear violation of the obligations of the contract. [a]

Judgment reversed.

*Dissenting Opinion by* GREENE, J. I cannot agree with the majority, that a widow is entitled to dower in a mere pre-emption right to land. It is conceded that the law in force at the date of the conveyance, must govern. At the time, O'Ferrall sold his right to Bissell, the statute of 1839 was in force. This statute gave dower according to the course of the common law. At common law, the widow shall have the third part of all the lands and tenements, whereof the husband was seized in fee simple, or fee tail at any time during coverture to hold to herself for the term of her natural life. 2 Black. Com., 129, 131.

On page 137, this author tells us: "Though the husband had the use of land in absolute fee simple, yet the wife was not entitled to any dower therein; he not being seized thereof." A pre-emption right only gives the person the preference to buy the land at a stated price. The party holding such a right is not in any sense of the word legally seized of the land. He has merely the temporary possession, and the prior right of purchase; the right to become seized. O'Ferrall had the use of the lots only;

(a) *See Davis v. O'Ferrall. Ante* 168.

but was not seized thereof, and could only have become so on paying therefor the stipulated price to the commissoner. At the time O'Ferrall sold his claim on the lots to Bissell, the title, the true legal seizin of the lots was in the United States, and remained there until they were entered by Bissell. As soon as Bissell secured his certificate of purchase from the commissioner, he acquired the absolute title. Dower being entirely a legal demand that can only attach when the husband has acquired a legal seizin of the property, it follows that no dower incumbrance could affect the lots in question, until the legal title was secured by Bissell; he having a wife, she was necessarily the first woman who became endowable of the lots. A party buying of Bissell, was not called upon to go behind his patent from the government.

No purchaser has been expected to go behind the government title. That has been regarded as the fountain head; the only reliable source, the only safe starting point, whence all titles to land in this state are traced. But this foundation to all our titles, has been shaken at least in this instance, and is required to yield to antecedent squatter claims. Vacillating and insecure as those claims are, and having covered a large portion of the best property in the state, serious loss and injustice must be inflicted upon innocent purchasers of property, if the widows of those who have been in possession of claims on the public land, can come in, under the cry of estoppel, bid defiance to government sales and patents, and claim their third of the property, on the ground that their husbands, were for a time in possession, and abandoned that possession to another, who subsequently acquired title. If this doctrine of estoppel can be extended so far as to be applicable to the case at bar, it can be made equally applicable to all squatter claims where the settlers' possession was transferred to a party who became the purchaser.

The fact that a possession is justified by a pre-emption
*24

right, gives it no additional validity. A pre-emption is not transferrable by deed or otherwise. A transfer works a forfeiture. It follows therefore, that when a pre-emptor sells his claim, or gives up his possession, he forfeits his pre-emption, and all the pretended equities he held under it, and the land is then subject to be entered by the first applicant. As a pre-emption right is not alienable, it follows that there can be no dower or relinquishment of dower, connected with such a right.

Neither can a pre-emption right to buy land, be inherited, it can only be exercised by the party who in person acquires it by actual residence and improvement. If he dies, the right dies with him. A wife can only be endowed of that realty in which her issue might become the heir. 2 Black., Com., 131.

In this case, it seems obvious, that Bissell acquired no title in the land by virtue of the deed from O'Ferrall. He only secured O'Ferrall's relinquishment of the pre-emption, which enabled him to purchase the lots at the government price. To secure such relinquishment, a deed was not necessary. A simple notice to that effect would have secured the same result; consequently, the deed should not have sufficient validity to produce an estoppel.

The doctrine of estoppel is *not applicable to this case.* It would be dangerous to truth, to investigation, and to titles generally, if estoppels are to be so indiscriminately recognized. Bissell's possession, under the purchase, was but temporary, and was subject to immediate ouster by any other party who might have secured the title from the government. Although O'Ferrall was in legal possession of the land by virtue of his pre-emption, Bissell could not acquire such legal possession from him, because a pre-emption possession is not transferrable. Bissell's possession was not authorized by law, until he secured the certificate of purchase from the government. The seizin from the government became permanent, and absorbed all others. He was then in possession under the government, and not under

O'Ferrall's deed. This deed, although one in form, was not one in effect. As a conveyance of title, it amounted to nothing more than a blank piece of paper. Upon its very face it showed the title to the lots to be in the United States, and hence it only purported to impart a claim right to the improvements and possession; and for that purpose a verbal contract was valid. Rev. Stat., 456, § 1. It follows, then, that there is no position taken by Bissell's grantee that is inconsistent with any fact recognized by that deed. In *Warren* v. *Leland*, 2 Barb., 613, it was held, that where the truth appears in the same deed with other matters which would otherwise work an estoppel, the party that would be so estopped may avail himself of such truth.

A man is said to be estopped, when he has done some act which the law will not permit him to deny. Lord Coke says, " an estoppel is, when a man is concluded by his own act or accceptance, to say the truth." Blackstone defines " an estoppel to be a special plea in bar, which happens when a man hath done some act, or executed some deed, which estops or precludes him from averring anything to the contrary."

In this case, it is true, Bissell received the deed from O'Ferrall; but it is not true that either he or his grantee seeks to controvert anything that they received under the deed. The deed itself shows all that is claimed by appellant. It shows that the title was not in O'Ferrall, but was in the United States. The deed itself shows that the right of dower could not attach to the lots described therein. It in effect guarantees the title to be in the United States and not in any one else. But if the doctrine of estoppel is applicable, Mrs. O'Ferrall is estopped from claiming dower under her husband's deed, as a privy thereto, because it shows that he was not legally seized of the premises.

But the doctrine of estoppel is not applicable to that deed, for another very obvious reason. The deed is inoperative, and has been so ever since Bissell obtained the permanent title from the government. In *Wallace* v. *Miner*, 6 Ham.,

it is decided that the recitals in a deed which is inoperative or void, does not work an estoppel. See, also, *Sinclair* v. *Jackson*, 8 Cow., 543.

Nor will the recital in a deed bind those who claim by title paramount to the deed. 1 Greenl., Ev., § 23, note 2 ; *Carver* v. *Jackson*, 1 Peters, 1. That Bissell's title was paramount will be readily conceded by all.

There is still another very conclusive reason why the doctrine of estoppel is not applicable to this case. It is a general rule that the grantee is not estopped from gainsaying anything mentioned in the deed, for it is the deed of the grantor only ; 1 Greenlf., Ev., § 24. True, if the grantee claims title under the deed, he is thereby estopped denying the grantor's title. But the grantee in this case does not claim title under the deed from O'Ferrall, nor does he deny the grantor's recital of title, as set forth in his deed. In *Miller* v. *Bagwell*, 3 McCord, 429, it is decided that a recital, to amount to an estoppel, must come from the party to be estopped, and not from his opponent. This is directly to the point and most conclusive of this case.

In *Comstock* v. *Smith*, 13 Pick., 116, it was held that a covenant in a deed that the grantor will warrant against all persons claiming under him, does not estop him from setting up any title subsequently acquired by him. That being the case with the grantor, much less reason is there for estopping the grantee, who made no such deed or covenant, from setting up such subsequently acquired title.

I cannot but feel that the majority opinion in this case has extended the doctrine of estoppels far beyond reasonable limits. This doctrine is at variance with the investigating policy of the law, for it precludes investigation. It is founded on convenience for the prevention of frauds, and should not be carried farther than the objects for which it was established. Hence, we are told by the authorities, that estoppels must be reciprocal and certain to every intent.; *Bolling* v. *Mayor*, 3 Rand., 563 ; *Lafoye* v. *Primon*, 3 Mis., 529. Estoppels are not to be favored ; *Leicester* v.

*Rehoboth,* 4 Mass., 180 ; *Bridgwater* v. *Dartmouth,* ib., 273 ; *Owen* v. *Bartholomew,* 9 Pick., 520.

Among the authorities cited in support of the estoppel in this case, that which seems to be the most appropriate and on which the most reliance is placed, is the case of *Sherwood* v. *Vandenburgh,* 2 Hill, 303. It may be well to inquire, what analogy has that case to this? In that case, M. died in 1778, and J., his only heir, married the plaintiff in 1783. In 1786, J. gave a quit claim deed to one P. of all lands which were to be granted by the state of New York, to M. as a gratuity for his military services as a Revolutionary soldier; subsequently a patent was issued to M; J. having died, his widow brought ejectment for dower, against a party in possession under title derived from P.; held, that the defendant was estopped from denying the seizing of the plaintiff's husband, and that therefore she was entitled to recover. To justify this conclusion, Nelson, C. J. claimed that under a statute of that state, the legal estate was to be deemed vested in M. the same as if the patent had been issued before his death, and that the title of J. and those claiming under him, were subject to the same incumbrances, by way of dower, &c., as if the patent had been thus issued and the lands had descended to J. the heir at law. Cowen, J. differed with judge Nelson, in this particular and says: "It is settled that such a seizin is not sufficient to confer any right upon the widow." He refers to *Stow* v. *Tifft,* 15 John., 458; and the cases there cited.

Now is there not a wide difference between that case, and the case at bar. In that case the land had been paid for by M.'s Military services, before coveyance by his heir J. the widow's husband. In this case the land was not paid for by O'Ferrall. In that case, the title passed through the husband ; in this, the husband never had any title. In that case, the grantee claimed under the deed from the husband ; in this, the claim is under an entirely different and paramount title.

And, unfortunately, for the majority opinion, the case in 2 Hill, and all the other cases cited from New York, on this point, have been pointedly overruled by the more recent and better considered case of *Sparrow* v. *Kingman*, 1 Comst., 242. It is in that case decided, that in ejectment for dower brought against a grantee of the husband, under a quit-claim deed, or against one holding under such grantee, the defendant, is *not* estopped from showing that the husband was not seized of such an estate in the premises as to entitle his widow to dower.

As the majority decision upon this point, reposes mainly upon authorities, which have been so positively overruled ; I regret exceedingly, that it should have been made, and I especially regret the necessity of interposing views so much at variance with those expressed by my learned and esteemed associates.

*Clark* and *Bissel*, and *T. Davis*, for appellant.

*Smith*, *McKinlay*, and *Poor*, for appellee.